## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  1:07-cr-10044 |
| ) | |
| COREY L. JOHNSON, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter is before the Court on Defendant Corey L. Johnson's Motion for Compassionate Release. (Dkt. 145). The Government has responded (dkt. 150), and Probation has filed a memorandum finding Defendant's proposed release plan suitable (dkt. 146 at 2). The matter is therefore ripe for review. For the following reasons, the Motion is denied.

### BACKGROUND

In July 2008, Defendant was mandatorily sentenced to life imprisonment for conspiracy to distribute more than 5 kilograms of cocaine and more than 50 grams of cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1), & 841(b)(1)(A). (Dkts. 48, 74). He now seeks compassionate release. In support of his request, Defendant offers three primary reasons: (1) his diagnosis of "polycythemia cancer;" (2) the risk of COVID-19 in light of his high blood pressure, prediabetes, and obesity; and (3) non-retroactive provisions in the First Step Act of 2018 that eliminated the mandatory life sentence for Defendant's convictions. (Dkt. 145 at 10–26). His proposed release plan indicates

he would stay with his fiancée, Kiara Armstrong, a placement Probation finds suitable. (Dkt. 146 at 2).

Defendant is currently housed at United States Penitentiary (USP) Coleman I, where there are no active COVID-19 cases among the inmate population, no inmate deaths, and five active cases among staff; 104 inmates and 60 staff members were previously infected and have recovered. *COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 29, 2021).[1] COVID-19 vaccines are being administered at the Coleman Federal Correctional Center; so far, 547 staff and 3,819 inmates, including Defendant (*see* dkt. 152-3 at 16), have been fully inoculated. *COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 29, 2021).[2]

---

[1] The Bureau of Prisons (BOP) website contains the following disclosure:
> These data are compiled from a variety of sources and reviewed by BOP Health Services staff before documented for reporting. **Not all tests are conducted by and/or reported to BOP.** The number of positive tests at a facility is not equal to the number of cases, as one person may be tested more than once. The number of tests recorded per site reflects the number of persons currently in BOP custody at the specific facility who have been tested, whether at that site or at a prior facility.

*COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 29, 2021) (emphasis in original). The website further indicates there have been 918 COVID-19 tests conducted at USP Coleman I, 1 is pending, and there have been a total of 116 inmates with positive tests. *Id.*

[2] The BOP website contains the following information about vaccine data:
> The information in this area of the resource page is updated each weekday at 3:00pm EDT. It is compiled from a variety of sources and reviewed by BOP Health Services staff before documented for reporting. The locations in the table below have received allocations of the vaccine. The numbers in the table only reflect staff and inmates that are fully inoculated[.]

*COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 29, 2021).

## LEGAL STANDARD

The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to ask the sentencing court for compassionate release. Pub. L. No. 115-391 § 603(b), 132 Stat. 5194, 5239. The decision whether to grant compassionate release is within a district judge's discretion, the standard for which is set by § 3582(c)(1)(A). *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). Under the statute, there are three requirements.

First, a defendant may not bring a compassionate release motion until either (a) the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (b) 30 days lapse "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A). To properly exhaust, the defendant must have "present[ed] the same or similar ground for compassionate release in a request to the Bureau as in [the] motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). This administrative exhaustion requirement, though not a jurisdictional prerequisite, is a mandatory claims-processing rule that must be enforced when properly invoked. *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021).

Second, the defendant must either be at least 70 years of age and have served 30 years of the sentence for which he or she is currently imprisoned, § 3582(c)(1)(A)(ii), or demonstrate "extraordinary and compelling reasons" for release consistent with any applicable policy statement issued by the United States

Sentencing Commission, § 3582(c)(1)(A)(i). The only relevant policy statement, U.S.S.G. § 1B1.13, is outdated and not currently binding on district judges, but it provides a "working definition of 'extraordinary and compelling reasons'" that can "guide [judicial] discretion without being conclusive." *Gunn*, 980 F.3d at 1180. Subsections (A)–(C) of the Application Note to § 1B1.13 enumerate three specific circumstances that qualify as "extraordinary and compelling reasons": (A) diagnosis of a terminal illness or serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) "death or incapacitation of the caregiver of the defendant's minor child" or the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13, Application Note 1(D).

Third, the Court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." § 3582(c)(1)(A).

## DISCUSSION

The parties agree Defendant has properly exhausted his administrative remedies. (Dkts. 150 at 14–15; 150-4; 150-5). They instead join issue on the questions whether Defendant has presented extraordinary and compelling reasons that

4

warrant compassionate release and whether the § 3553(a) factors militate in favor of release.

Recent Seventh Circuit decisions squarely dispel two of Defendant's proffered reasons for compassionate release. First, "prisoners who have access to a vaccine cannot use the risk of COVID-19 to obtain compassionate release." *United States v. Ugbah*, No. 20-3073, 2021 WL 3077134, at *1 (7th Cir. July 21, 2021) (citing *United States v. Broadfield*, No. 20-2906, 2021 WL 3076863, at *2 (7th Cir. July 21, 2021)). As Defendant has been fully inoculated against COVID-19, he cannot now use the risk of contracting COVID-19 as a basis for compassionate release. Second, "the discretionary sentencing reduction authority conferred by § 3582(c)(1)(A) does not permit—without a district court finding some independent 'extraordinary or compelling' reason—the reduction of sentences lawfully imposed before the effective date of the First Step Act's" non-retroactive changes to sentencing provisions. *United States v. Thacker*, No. 20-2943, 2021 WL 2979530, at *4 (7th Cir. July 15, 2021).[3] Thus, the fact that, if sentenced today, Defendant's mandatory minimum would be 25 years' imprisonment rather than life imprisonment cannot constitute an extraordinary and compelling reason for compassionate release. *Id.* at *4, *6.

---

[3] Though *Thacker* dealt with the First Step Act's non-retroactive anti-stacking amendment, there is no reasonable argument that its holding does not extend to the First Step Act's other non-retroactive sentencing amendments, such as the one Defendant identifies here. The Court recognizes that this holding is in contravention to its prior holding in *United States v. Haynes*, No. 4:96-CR-40034, 2021 WL 406595, at *6 (C.D. Ill. Feb. 5, 2021), but the Court is bound to adhere to Seventh Circuit precedent.

That leaves Defendant's diagnosis of polycythaemia.[4] "Polycythaemia can be divided into several different types, depending on the underlying cause." *Polycythaemia*, Nat. Health Serv., https://www.nhs.uk/conditions/polycythaemia/ (last visited July 29, 2021). In October 2019, Defendant was provisionally diagnosed with polycythaemia vera.[5] (Dkt. 152-1 at 7). He was referred to a specialist who ran additional testing and concluded the polycythaemia was likely secondary[6] (possibly due to sleep apnea) rather than polycythaemia vera. (Dkt. 152-2 at 111–120, 131–138). Defendant's medical records indicate his polycythaemia is largely asymptomatic, save for sporadic itching, and is being treated with "baby aspirin" and periodic phlebotomies. (Dkts. 152-1, 152-2, 152-3). Notably, "[i]f well controlled, polycythaemia should not affect your life expectancy, and you should be able to live a normal life. However, people with [polycythaemia vera] can have a slightly lower life expectancy than normal due to the increased risk of problems, such as heart attacks

---

[4] "Polycythemia" is sometimes spelled "polycythemia."
[5] Polycythaemia vera is a rare genetic condition that can, in some cases, cause serious complications and/or develop into cancer. *Polycythaemia*, Nat. Health Serv., https://www.nhs.uk/conditions/polycythaemia/ (last visited July 29, 2021). The Mayo Clinic describes polycythaemia vera as a form of blood cancer. *Polycythaemia vera*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/polycythaemia-vera/symptoms-causes/syc-20355850 (last visited July 29, 2021).
[6] "Secondary polycythaemia is where an underlying condition causes more erythropoietin to be produced. This is a hormone produced by the kidneys that stimulates the bone marrow cells to produce red blood cells." *Polycythaemia*, Nat. Health Serv., https://www.nhs.uk/conditions/polycythaemia/ (last visited July 29, 2021); *see also Polycythaemia Vera*, Nat. Org. for Rare Disorders, https://rarediseases.org/rare-diseases/polycythaemia-vera/ (last visited July 29, 2021).

and strokes." *Polycythaemia,* Nat. Health Serv., https://www.nhs.uk/conditions/polycythaemia/ (last visited July 29, 2021).

Though not binding, the Court considers the United States Sentencing Commission's policy statement on compassionate release. It suggests extraordinary and compelling reasons exist where a movant is diagnosed with a terminal illness or serious condition "that substantially diminishes [his or her] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, Application Note 1(A). It describes "terminal illness" as "a serious and advanced illness with an end of life trajectory" and provides "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia" as examples thereof. *Id.*

On the record before it, the Court cannot conclude Defendant's polycythaemia constitutes an extraordinary and compelling reason warranting compassionate release. Defendant's medical records do not demonstrate his condition is terminal or even incurable, and it is simply not—at this time—comparable to the terminal conditions listed in the policy statement. Indeed, Defendant's specialist's opinion that his polycythaemia is secondary suggests it may be "cured" by treating the underlying cause. Further, there is no evidence Defendant is unable to administer self-care within the prison setting, and Defendant makes no such argument. He is currently largely asymptomatic and, despite his contention to the contrary,[7] he appears to be

---

[7] Defendant's motion outlines some suggested treatments for polycythaemia cancer (*i.e.*, polycythaemia vera), which include phlebotomy and drug therapy. (Dkt. 145 at 12). However, Defendant's specialist suggests he suffers from secondary

receiving appropriate care from a specialist. He therefore fails to meet the standard set forth in the United States Sentencing Commission's policy statement, which is highly persuasive in this instance.

The Court is sympathetic to Defendant's plight. But contrary to his indication that his prognosis is "bleak," medical sources—including those he cites—suggest a rather positive prognosis, provided his condition continues to be well-managed. He appears to lead a relatively normal life and is largely free of symptoms attributable to the condition he complains of. For these reasons, the Court cannot conclude Defendant's diagnosis of polycythaemia constitutes an extraordinary and compelling reason for compassionate release. Of course, if Defendant's condition worsens to the point he is unable to provide self-care in the prison setting and it becomes clear he is unlikely to recover from it, he may reapply for compassionate release.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release (dkt. 145) is DENIED.

SO ORDERED.

Entered this 30th day of July 2021.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge

---

polycythaemia, not polycythaemia vera, so Defendant's argument is misguided. Moreover, Defendant has been prescribed baby aspirin (as recommended by the source he cites (dkt. 150 at 12)), he has received phlebotomies since his diagnosis, and phlebotomies are regularly discussed as a treatment option with his specialist. (Dkt. 152-2 at 111–125). His contention that he is not receiving "the recommended course of treatment" is therefore unsupported by the record.